# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Rational Spirits, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:16-cv-3406-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Rattleback, LLC, Wynn Sanders, | ) | |
| and Theron Regnier Wannberg | ) | |
| *a/k/a Theron Regnier*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' joint motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 7), Defendant Wynn Sanders' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) (ECF No. 20), and Plaintiff Rational Spirits, LLC's motion for default judgment against Sanders pursuant to Federal Rule of Civil Procedure 1 (ECF No. 21). For the following reasons, the Court grants the Rule 12(b)(6) motion in part and denies it in part. The Court denies the latter two motions.

## BACKGROUND

This case is about a whiskey business gone awry. Rattleback is a spirits company whose members are Defendants Wynn Sanders and Theron Wannberg. In April 2016, Rattleback contracted with distiller Rational Spirits for the production and distribution of a liquor called Rattleback Rye. Around that same time, Rational Spirits and Rattleback each signed separate agreements with Lost Spirits Distillery, LLC regarding the sales and marketing of their products.

Production of Rattleback Rye did not go well. The ingredients used to make the liquor turned out to be contaminated, making the product unsellable. Payment disputes between Rational Spirits and Rattleback ensued; by September, production of the liquor ceased and the

parties were at an impasse.  Rational Spirits repeatedly sought payment under the contract, but Sanders asserted that Rattleback had no money.

Around that same time, Lost Spirits terminated its relationship with Rational Spirits and relocated to California.  Rational Spirits believes that Rattleback encouraged Lost Spirits to cut ties with Rational Spirits and that the two companies have formed a partnership for the purpose of competing with Rational Spirits.

## **PROCEDURAL HISTORY**

Rational Spirits filed suit against Rattleback, Sanders, and Wannberg in October 2016.  It alleged claims against all three of them for breach of contract, misrepresentation, and constructive fraud.  Rational Spirits also asserted a civil conspiracy claim against Sanders and Wannberg.

In November 2016, the three defendants filed a joint motion to dismiss under Rules 12(b)(5) and (6).  They argued that Rational Spirits had not properly served them and that, in any event, it had not adequately pled most of its causes of action.  After Rational Spirits filed a response, Rattleback and Wannberg conceded they were properly served, leaving Sanders as the sole defendant challenging service.  The Court denied the Rule 12(b)(5) portion of the motion without prejudice; because the time for Rational Spirits to serve Sanders had not yet expired, the motion was premature.  The Court did not address the Rule 12(b)(6) arguments at that time.

After the service deadline expired in January 2017, Sanders filed a renewed motion to dismiss under Rule 12(b)(5). Rational Spirits filed a response to that motion, as well as its own motion to sanction Sanders with default judgment.  Sanders then filed a response opposing Rational Spirits' motion, as well as a reply in support of his own renewed motion.

With the motions thoroughly briefed, they are now ripe for consideration.

## ANALYSIS

### I. Sufficiency of Service upon Sanders

Rational Spirits hired a process server to serve Sanders and the other defendants. The server took a copy of the summons and complaint to a UPS store in Marina del Rey, California, where Rattleback and Sanders each rent separate mailboxes. After confirming with a store employee that Sanders had a mailbox there, the server handed the employee Sanders' copy of the summons and complaint.

A plaintiff can serve an individual defendant by delivering a copy of the summons and complaint "to an agent authorized by appointment . . . to receive service of process." Fed. R. Civ. P. 4(e)(2)(C). When Sanders began renting the mailbox at the UPS store, he agreed in writing as follows: "I irrevocably authorize [the UPS store] to act as my agent for service of process to receive any legal documents that may be served upon me. This authorization shall continue . . . until two years after my mail receiving service has been terminated." (Pl.'s Mot. Default J., Ex. 3, Sanders Acknowledgement, ECF No. 21-4, at 1.) Nothing in the record suggests that this authorization was not in effect when the process server went to the UPS store. Thus, Rational Spirits served Sanders by delivering a copy of the summons and complaint to an employee of his appointed agent.

Instead of focusing on this straightforward analysis, Rational Spirits and Sanders debate at length whether the process server's actions constitute effective service under various states' laws. *See* Fed. R. Civ. P. 4(e)(1). That debate addresses an immaterial issue. Satisfying Rule 4(e)(2)(C) is sufficient to accomplish service. *See* Charles A. Wright *et al.*, Federal Practice and Procedure § 1094 (4th ed.) ("If the plaintiff chooses to follow one of the specific means of service set out in Rule 4(e)(2) and complies with the prescribed procedure for doing so, service is

effective regardless of whether or not that mode of service also is valid under the forum state's law."); *id.* ("If the plaintiff properly serves a defendant by the 'federal' means of service set out in Rule 4(e)(2), the plaintiff need not fear that service will be invalidated because state law would not permit the use of that methodology.").

As mentioned above, Sanders and Rattleback have separate mailboxes at the UPS store. He rents box 111. Rattleback rents box 719. In his proof-of-service affidavit, the process server states he gave Sanders' copy of the summons and complaint to the UPS store employee at "13428 Maxella Ave # 719"—in other words, at Rattleback's mailbox. Sanders asserts in an affidavit that he never authorized the UPS store to accept service for him at *that* mailbox; rather, his authorization was valid only for box 111. The Court does not find that assertion persuasive.

Sanders is technically correct that he contracted with the UPS store to rent only box 111 and that he never specifically authorized the UPS store to accept service for him at box 719. However, the acceptance-of-service authorization he signed extends more broadly than papers directed to any particular mailbox. As mentioned above, he appointed the UPS store as his service agent for "any legal documents that may be served upon me." That authorization statement contains no language restricting its scope. There is no qualifying language that the appointment extends only, for example, to papers addressed to him explicitly at box 111 or to papers received by mail rather than through hand delivery. Absent such restrictions, the fact that the process server mentioned the wrong mailbox in his service affidavit does not negate the fact that he handed Sanders' copy of the summons and complaint to a UPS store employee. Because Sanders' broad authorization allowed service to be made upon him in that manner, it was proper.

Lastly, Sanders points to the following language in his authorization agreement:

> I understand that [the UPS store] will (A) place a copy of the documents or a notice that the documents were received into my mailbox or other place where I

> usually receive my mail . . . and (B) send all documents by first-class mail to the home or other address last known to the [UPS store].

(Pl.'s Mot. Default J., Ex. 3, Sanders Acknowledgement, ECF No. 21-4, at 1.)

Sanders contends that Rational Spirits has failed to prove the UPS store carried out its obligations to put his copy of the summons and complaint in box 111 or to mail it to him at his home address. Sanders, however, cites no authority that places such a burden on Rational Spirits. In any event, the UPS store has those obligations in order to ensure that Sanders gets timely notice of papers served upon him. There can be no doubt that he received such notice, as he and the other defendants filed their initial motion to dismiss before the expiration of their deadline for responding to the complaint. The Court therefore denies Sanders' Rule 12(b)(5) motion.

## II.     Request for Default Judgment as a Sanction

Rational Spirits asks the Court to sanction Sanders by entering default judgment against him. It contends Sanders lied in his affidavit about his connection to the UPS store and, as punishment, Sanders should lose his right to contest liability or damages in this lawsuit.

In his affidavit, Sanders stated that he does not receive mail at box 719, that he has not signed any mail service agreements for that box, and that he has not specifically authorized the UPS store to be his agent for acceptance of service at that box. Rational Spirits has not produced any evidence that those statements are untrue. Although Sanders provided an incomplete picture of the relevant facts by omitting from his affidavit facts about the connection he *does* have to that UPS store, the Court is hesitant, at this early stage in the proceedings, to view that as anything worse than ill-advised gamesmanship. However, the Court cautions Sanders—as well as the other parties—that its inclination to assume the best is not unending.

Before moving on, the Court addresses another Rule 1 issue. Apparently, before Sanders filed his renewed Rule 12(b)(5) motion, he offered to waive service but Rational Spirits rejected the offer. If that is true, then both sides have wasted the Court's time and resources. Persisting in a defense that you privately offered to concede is antithetical to the goal of just, speedy, and inexpensive litigation. *See* Fed. R. Civ. P. 1. So is rejecting the offer so that you can accuse your opponent of perjury.

With that, the Court turns to the Rule 12(b)(6) motion.

## II.     Sufficiency of the Complaint

The three defendants contend Rational Spirits has failed to state a claim against any of them for misrepresentation or constructive fraud. Wannberg and Sanders also contend Rational Spirits has failed to allege a claim against either of them for breach of contract[1] or for civil conspiracy. The Court agrees with some, but not all, of those assertions.

A motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim "challenges the legal sufficiency" of a pleading. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 482 n.5 (D. Md. 2009) (noting that Rule 12(b)(6) applies to cross-claims). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (explaining the "two-pronged approach" for analyzing Rule 12(b)(6) motions).

### A.     Breach of Contract

Rational Spirits and Rattleback were the only parties to the contract at issue in this case. Rational Spirits, however, alleges that all three defendants are liable for breaching the contract.

---
1. Rattleback does not seek to be dismissed from the breach of contract claim.

6

Sanders and Wannberg argue Rational Spirits has not alleged a factual basis for them to be personally liable for Rattleback's purported breach. The Court disagrees. Rational Spirits has alleged facts in the complaint that, if true, may satisfy South Carolina's two-prong test for piercing the corporate veil. *See Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984) (citing in part, *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 686–87 (4th Cir. 1976)). Specifically, Rational Spirits' allegations regarding Rattleback's failure to register as a foreign business and its lack of funding appear to relate to the first, second, and fourth factors relevant to *Sturkie*'s first prong. Rational Spirits also alleges that Rattleback, knowing it was in default of its contractual obligations to Rational Spirits, used its money to fund a competing business. That allegation relates to the fifth factor of *Sturkie*'s first prong, as well as to the second *Sturkie* prong. Therefore, the Court will not dismiss the breach of contract claim.

### B. Misrepresentation

Rational Spirits alleges the defendants "willfully and/or negligently" made a variety of misrepresentations over the course of their relationship with Rational Spirits. (Compl., ECF No. 1, ¶¶ 68–72.) The defendants argue the complaint lacks all the allegations needed to state a claim for either fraud or for negligent misrepresentation. The Court agrees. Absent from the complaint are allegations indicating that Rational Spirits relied on the purported misrepresentations,[2] that its reliance was justified, or that its reliance proximately resulted in it sustaining damages. Those elements must be proven in order to recover under either type of misrepresentation theory. *See West v. Gladney*, 533 S.E.2d 334, 337 (S.C. Ct. App. 2000) (listing justifiable reliance and proximately caused injury as two elements of negligent misrepresentation); *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993) (listing actual

___

2. Rational Spirits does make some allegations regarding reliance and inducement. However, they appear later in the complaint, and Rational Spirits did not incorporate them into its misrepresentation cause of action.

7

reliance, right to rely, and proximately caused injury as three elements of fraudulent misrepresentation). The complaint also fails to allege that any of the defendants owed Rational Spirits a duty to communicate with it truthfully, which is an element of a negligent misrepresentation claim. *See West*, 533 S.E.2d at 337. Thus, Rational Spirits has failed to state a facially plausible claim for either type of misrepresentation.

### C.   Constructive Fraud

Rational Spirits' third cause of action is one for constructive fraud. "To establish constructive fraud, all elements of actual fraud except the element of intent must be established." *Ardis*, 431 S.E.2d at 269. "However, in a constructive fraud case, where there is no confidential or fiduciary relationship, and an arm's length transaction between mature, educated people is involved, there is no right to rely," and thus there can be no constructive-fraud liability. *Id.* at 270. The contract between Rational Spirits and Rattleback states unequivocally that each company "is acting as an independent contractor and they are not and shall not be considered as joint ventures [sic], partners, agents, franchisers/franchisees, or employers/employees of each other." (Compl., Ex. 1, Contract, ECF No. 1-1, at 11.)  Moreover, Rational Spirits refers to itself in its complaint as "an arms-length third-party vendor." (Compl., ECF. No. 1, at ¶ 79.) These statements undercut any reading of the complaint that Rational Spirits had a right to rely on the defendants' conduct. Thus, Rational Spirits has failed to state a facially plausible claim for constructive fraud.

### D.   Civil Conspiracy

Finally, Rational Spirits has asserted a civil conspiracy claim against Sanders and Wannberg. Where, as here, the complaint contains multiple causes of action, the alleged wrongful acts from those other claims cannot serve as the basis for the civil conspiracy claim.

*Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. Ct. App. 2009). Rather, the plaintiff "must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Id.* at 875. Sanders and Wannberg argue Rational Spirits has not satisfied that pleading requirement. The Court agrees. The alleged acts on which Rational Spirits bases its claim—namely, that Rational Spirits was induced to execute the contract with Rattleback and that Lost Spirits was induced to terminate its relationship with Rational Spirits and become a competitor—are the same acts that form the basis for the other claims. Thus, Rational Spirits has failed to state a facially plausible claim for civil conspiracy.

### E.   Request for More Definite Statement

The defendants assert in a conclusory fashion that the complaint's allegations are too vague for them to formulate a response. *See* Fed. R. Civ. P. 12(e). In their Rule 12(b)(6) motion, they ask that the Court order Rational Spirits to supplement its allegations on any claims that survive their motion. The Court denies their request. They have not even attempted to point out any vagueness problems in the breach of contract claim, and the Court sees none.

### F.   Leave to File an Amended Complaint

To summarize, the complaint fails to state any claims for relief other than breach of contract. Rational Spirits has fourteen days from the date of this order to file an amended complaint that sufficiently alleges the three defective claims. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (stating Rule 12(b)(6) dismissals generally should be without prejudice in order "to allow at least one amendment regardless of how unpromising the initial pleading appears" (citation omitted)).

V.      **Modification of Local Civil Rule 7.02 for This Case**

This business dispute appears to have gotten personal—and not just for the litigants. The filings in this still-young case already contain a number of statements impugning the competence and integrity of the parties' counsel. The Court trusts that counsel have simply started off on the wrong foot and will be more cooperative if they spend some time together. Therefore, pursuant to Local Civil Rule 1.02, the Court modifies Local Civil Rule 7.02's application to this case as follows: All conferences mandated by the rule shall be conducted in person. The affirmation of counsel shall include a statement of the date, time, and location of that conference, and it shall state who participated in the conference and whether the participants were able to resolve or narrow any issues in the conference. If an in-person conference could not take place, the required explanation of why the conference could not be held shall include, at a minimum, a statement of all efforts counsel made to try to hold the conference and why those efforts failed.

## CONCLUSION

It is **ORDERED** that the defendants' joint motion to dismiss under Rule 12(b)(6) is **GRANTED IN PART AND DENIED IN PART**, that Sanders' motion to dismiss under Rule 12(b)(5) is **DENIED**, and that Rational Spirits' motion for default judgment is **DENIED**.

**AND IT IS SO ORDERED.**

                                                                                                            _____
                                                                                                            PATRICK MICHAEL DUFFY
                                                                                                            United States District Judge

**March 23, 2017
Charleston, South Carolina**

10